# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PAULETTE MASHBURN,

       Plaintiff,

vs.                                                                                    No. CIV 03-747 JB/RLP

ALBUQUERQUE POLICE DEPT.,
CITY OF ALBUQUERQUE,
CHIEF GIL GALLEGOS, in his official and personal capacities,
DEPUTY CHIEF SCHULTZ, in his official and personal capacities,
LT. STEVEN TATE, in his official and personal capacities,
SGT. T. PARKINS, in his official and personal capacities,

       Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel, filed March 1, 2004 (Doc. 27). The primary issue is whether Defendant Chief Gil Gallegos' statements in the presence of Defendant Sgt. Todd Parkins and their attorney, Assistant City Attorney, Paula Forney, are privileged. Because there is evidence in the record that the purpose of the conversation was to give information to the attorney and to secure legal advice, and because there is no evidence to the contrary, the Court will find the conversation is privileged and deny the motion.

## **FACTUAL BACKGROUND**

During pursuit of a suspected bank robber, Paulette Mashburn and her partner, Officer Paloni, also a female, shot their firearms at the suspect's car in an attempt to stop it from fleeing. A male officer did the same thing later in the pursuit. After an Internal Affairs ("IA") investigation, officials found that Mashburn and Paloni's shootings were not justified. Officials found that the male officer's shooting was justified. Approximately ten months after the incident, Defendant Gallegos

issued memoranda to all three officers, finding that all the shootings were justified and ordering all three to take remedial standard operating procedures training.

## PROCEDURAL BACKGROUND

Mashburn filed suit against Defendant City of Albuquerque, Albuquerque Police Department, and four employees, alleging sexual discrimination and other wrongs. See Complaint for Damages Arising from Violations of Title VII of the Civil Rights Act of 1964 As Amended, 42 U.S.C. 2000E, 42 U.S.C. 1983 and Tort, attached to Petition for Removal, filed June 25, 2003 (Doc. 1). On November 7, 2003, Gallegos and Parkins met with their counsel, Forney. See Affidavit of Paula I. Forney ¶ 3, at 2 (executed March 15, 2004). The Defendants met with their counsel to review the facts of the case, to obtain legal advice from counsel, and to plan the strategy for their defense. See id. ¶¶ 3-4, at 2. During the course of that meeting, Gallegos and Parkins provided information concerning Mashburn's case to their attorney. See id. The information that Gallegos and Parkins provided was given in the course of obtaining professional advice from Forney and aiding Forney in planning the strategy of the Defendants' cases. See id. The Defendants understood that these communications were privileged. See id. ¶ 5, at 2.

Robert Scott, Mashburn's attorney, deposed Gallegos on January 9, 2004. During his deposition, Gallegos testified that, as the final decision maker for the Albuquerque Police Department, he made the final decision that Mashburn's use of force on November 19, 2001 was justified. During the deposition, the following exchange occurred:

> Q. Why did you change their findings [for Officers Paloni and Mashburn] from sustained to exonerated?
>
> A. Well, I reviewed the entire case in its entirety. There was over a thousand pages of written documents, plus some tapes and so forth, and I felt that – that there was

>a very serious situation that occurred. I know that being involved in similar situations, you know, things can get chaotic and so forth. And looking at the totality of the situation, I felt that the officers acted without being malicious. There was no intent to violate any SOPs, that they were doing the best they could under the circumstances. And it was again, a very chaotic situation, that I decided that they should be exonerated, and that the shootings – there was actually four shootings, that they should be justifiable, and I decided not to impose any discipline.

Deposition of Gilbert Gallegos at 4:10-25 (taken January 9, 2004).

Scott deposed Parkins on January 30, 2004. Forney attended the deposition. During the deposition, Scott asked Parkins whether he knew or had heard why Gallegos changed the findings against the female officers from sustained to justified. See Deposition of Todd Parkins at 102:19-22 (taken January 30, 2004). Parkins stated that Gallegos had told him this information "[w]ith my attorney present" and that he "d[id]n't know if [he could] discuss that." Id. at 102:23-24. Forney stated: "No." Id. at 102:25. Scott then asked Parkins what Gallegos had told him. See id. at 103:1. Forney instructed Parkins not to answer and cited the attorney-client privilege as the basis for her instruction. See id. at 103:2-14.

>Specifically, the following exchange occurred:
>
>Q. Do you know why Chief Gallegos decided to reverse your findings on those officers?
>
>A. No.
>
>Q. Okay. Have you heard why he did this?
>
>A. With my attorney present, he told me, but I don't know if I can discuss that.
>
>MS. FORNEY: No.
>
>Q. (By Mr. Scott) What did he tell you?
>
>MS. FORNEY: Don't answer the question.

>MR. SCOTT: You're directing him not to answer the question?
>
>MS. FORNEY: Yes. I just said don't answer the question.
>
>MR. SCOTT: I just want to be clear.
>
>MS. FORNEY: That is clear.
>
>MR. SCOTT: What is the basis of your objection?
>
>MS. FORNEY: Attorney-client privilege.

Id. at 102:19 to 103:14.

Forney has not filed a motion for protective order. On February 27, 2004 at 2:12 p.m., Scott spoke with Forney by telephone regarding his anticipated motion to compel regarding Parkins' testimony. The note in Scott's case management program states the following: "Spoke to her and she won't agree to tell me what Parkins heard Chief Gallegos say." See Memorandum to File (dated February 27, 2004); Affidavit of Robert L. Scott, ¶¶ 5-7, at 1-2 (executed March 22, 2004).

Scott's intent in making the call to Forney on February 27, 2004 was to try to resolve this discovery issue. See id. ¶ 2, at 1. Based on Forney's responses during Parkins' deposition and the February 27, 2004 telephone call, Scott thought this issue was non-negotiable. See id. ¶¶ 4, 7, at 1-2. Scott therefore thought he had no alternative but to file a motion to compel.

On March 1, 2004, Mashburn filed her motion to compel. Mashburn did not provide a certification of good faith effort to resolve the dispute to her motion without Court intervention. Mashburn moves the Court for an order compelling Parkins to answer questions in his deposition about what Gallegos stated in their counsel's presence.

## **LEGAL ANALYSIS**

From the record before the Court, there was a factual and legal basis for Forney's instruction

to Parkins not to answer the question regarding the conversation with Gallegos and Forney. Mashburn has not presented other facts or law that suggest the privilege does not apply to that conversation. The Court will deny the motion to compel.

### I.        **THE COURT WILL CONSIDER THE MERITS OF THE MOTION.**

The Defendants contend that Mashburn did not comply with rule 37(a)(2)(A), because her counsel did not confer in good faith with the Defendants to resolve this dispute. Rule 37(a)(2)(A) requires that, before filing a motion to compel, the moving party must confer and attempt in good faith to resolve the discovery dispute with the opposing parties. See Fed. R.Civ. P. 37(a)(2)(A). The motion must also include a certification of the attempts made to resolve the dispute without court intervention. See id. The Defendants argue that, because Mashburn did not confer in good faith and make the necessary certification, the Court should deny her motion to compel.

In First Savings Bank v. Bank System, Inc., 902 F. Supp. 1356 (D. Kan. 1995), the court described the efforts of counsel:

> The plaintiff's counsel's actions violate the spirit, if not the literal terms, of D. Kan. Rule 210(j). Eight business days before filing the motion to compel, the plaintiff's counsel twice asked for a privilege log. Both requests were made over a single twenty-four hour period . . . . Both appear to be pro forma requests intended more to make a record than to resolve a dispute . . . . Had the issue been openly and fully discussed among the senior attorneys responsible for the case, it seems quite reasonable to expect that a workable resolution would have been reached.

Id. at 1365. Mashburn's efforts in this case are subject to the same analysis, but the Court is not convinced that Mashburn's efforts violated the spirit or the letter of the rule. The Court concludes that Scott made a good faith attempt to contact Forney and to try to informally resolve the dispute.

Had Scott and Forney discussed the matter more fully, Scott might have better understood the factual and legal basis for Forney's objection during the deposition. It is possible that the parties

could have resolved this issue or, at least more clearly identified the issue, before involving the Court. The Court's expectation is that the parties will attempt in good faith to resolve the dispute. "[W]hen the inevitable occurs, a difference of opinion regarding the propriety of a question, there is no judge to rule on the dispute . . . . [C]ounsel are expected to resolve their differences . . . without outside intervention." Boyd v. University of Maryland Medical System, 173 F.R.D. 143, 144 (D. Md. 1997).

Mashburn made a reasonable effort to resolve this dispute. The Court will not deny her motion because of a failure to comply with rule 37(a)(2)(A). The motion is properly before the Court, and the Court will consider the merits of the motion.

## II. THE DEFENDANTS WERE NOT OBLIGATED TO FILE A MOTION FOR PROTECTIVE ORDER IN THESE CIRCUMSTANCES.

Mashburn argues that the Defendants were obligated to file a motion for protective order once Forney instructed Parkins not to testify regarding his conversation with Gallegos and counsel. There is some support for this position. "[T]he party opposing the questioning must promptly file a motion for protective order." Furniture World v. D.A.V. Thrift Stores, Inc., 168 F.R.D. 61, 63 (D.N.M. 1996)(Smith, Magistrate J.). Mashburn argues that, without this rule, counsel could regularly interfere with depositions by directing clients not to answer on the basis of the privilege without any consequences.

The facts in Furniture World v. D.A.V. Thrift Stores, Inc. are different from those in this case, and the policy outlined in that case regarding who must move first may not always be applicable. Indeed, it is not applicable here. In Furniture World, defense counsel objected to the deposition of a consulting expert, asserting that the Defendants did not anticipate calling the expert as a witness except in rebuttal, and that certain documents concerning the expert were protected by the work

product privilege. See id. at 62. In this case, there is no assertion of work product privilege, and no consulting expert is involved. Moreover, the objection came up in the deposition, not before. And the objection was to one or two questions, not the entire deposition.

Directing a deponent not to answer a question is a serious action, but it does not always require the additional step of filing a motion for protective order to justify that action. Rule 30(d)(1) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege . . . or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1). The rule is stated in the disjunctive and contemplates that an objection based on attorney-client privilege can properly be made during the course of a deposition without the need for immediately seeking a protective order. "It is well-settled that counsel should never instruct a witness not to answer a question during a deposition unless the question seeks privileged information or unless counsel wishes to adjourn the deposition for the purpose of seeking a protective order from what he or she believes is annoying, embarrassing, oppressive or bad faith conduct by adverse counsel." First Tennessee Bank v. Federal Deposit Ins. Corp., 108 F.R.D. 640, 640 (D.C. Tenn. 1985)(citing Ralston Purina Co. v. McFarland, 550 F.2d 967, 973-74 (4th Cir. 1977)).

The Defendants are not required to file a motion for protective order every time the attorney instructs her client not to answer. Suspending the entire deposition because of a dispute over a single question or line of questioning is not always warranted given the drastic nature of this remedy. See Boyd v. University of Maryland Medical System, 173 F.R.D. at 145. And if the witness must respond to the question, the result would be a waiver of the privilege. Unlike a relevance objection, which may be cured by subsequent proceedings, once the information is disclosed, the privilege is forever lost. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1369 (10th Cir. 1997).            T h e

Defendants' objection complied with the Federal Rules: the Defendants were not required to suspend the deposition and file for a protective order. The Court will not adopt a rule that obligates the defendants to immediately suspend the deposition, file for a protective order, and delay the discovery process. The Court will also not require the objector to always go first and file a motion for protective order. Sometimes, upon reflection, parties accept the objection; some issues that seem important in the heat of a deposition and examination appear less important after the deposition as the attorneys move on to other matters. There is no reason to require immediate motions for protective order.

## III.   THE INFORMATION SOUGHT IS RELEVANT AND DISCOVERABLE ABSENT PRIVILEGE.

The general rule governing discovery is to permit the liberal investigation of claims. In furtherance of that rule, the presumption is in favor of discovery. Rule 26 of the Federal Rules of Civil Procedure allows for broad discovery:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Mashburn makes factual assertions regarding pretext. One of the key issues in this case is the reason the Defendants decide to change Mashburn's finding for her shootings from sustained to justified. Mashburn contends that the Defendants changed the finding to cover up their gender discrimination against her. What Parkins heard Gallegos say is relevant to the Defendants' motive for their actions against Mashburn and is, absent privilege, discoverable.

Furthermore, if what Parkins heard Gallegos say differs from Gallegos' deposition testimony, then Mashburn has a right, absent privilege, to question Parkins on this point. His answer could reasonably lead to the discovery of impeachment evidence against Gallegos. It could also reasonably lead to the discovery of evidence that would undercut the Defendants' credibility or create a fact issue regarding the Defendants' reasons for changing the finding against Mashburn.

## IV.  THE DEFENDANTS HAVE MET THEIR BURDEN OF SHOWING THAT THE INFORMATION WHICH MASHBURN SEEKS IS PRIVILEGED.

As the parties asserting the privilege, the Defendants bear the burden of proving that the privilege applies. See Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995)(addressing the applicability of the work product doctrine). "The attorney client privilege is the oldest of the privileges for confidential communications." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

> The purpose of the AC privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."

Citizens Progressive Alliance v. United States Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1357 (D.N.M. 2002)(Smith, Magistrate J.)(quoting Upjohn Co. v. United States, 449 U.S. at 389). The courts broadly construe the attorney client privilege to accomplish this goal. See Sprague v. Thorn Americas, Inc., 129 F.3d at 1370-71.

"[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998)(citing Motley v. Marathon Oil Co., 71 F.3d 1547, 1550-51 (10th Cir.

1995), cert. denied, 517 U.S. 1190 (1996)). "In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d at 794. The Defendants have provided evidence establishing that Gallegos' statement in the presence of Parkins and Forney was related to legal advice or strategy.

Mashburn asked Parkins to reveal a communication that took place during a meeting between the Defendants and their attorney on November 7, 2003. The meeting was held with the intention of having full and frank discussion concerning this case, advising the Defendants about the case, and formulating strategy for defending the case. See Forney Aff. ¶¶ 3-5, at 2. As such, the conversation was privileged and not subject to discovery.

The information that Mashburn seeks is privileged. It is not subject to discovery pursuant to rules 26 and 30. The Defendants need not provide information about meetings between the Defendants and their attorneys to discuss legal theories, planning sessions, steps, strategy, and legal analysis.

## V.    SCOTT'S QUESTIONING WAS NOT INAPPROPRIATE.

The Defendants concede that, when Scott first asked the question, it was acceptable, as he did not know the nature of the response he would receive; the Defendants argue, however, that once Scott was informed that the question involved communications between the Defendants and their attorney, he should have ceased questioning. Instead, Scott asked Parkins about the communication's content. See Parkins Depo. at 102:22 to 103:1.

The Defendants contend that there is a substantive difference between a deposition question that does not request privileged information, or only reaches such privileged information in the course

of seeking non-privileged information, and a deposition question that is asked knowing that the inquiry involves communications between a defendant and his attorney. The Defendants argue that the deposition question at issue falls within the second category and in doing so violates the limits of discovery that rule 26 establishes. "[I]t is also presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1) . . . and continuing to do so after an objection shall be evidence that the deposition is being conducted in bad faith . . . ." Boyd v. University of Maryland Medical System, 173 F.R.D. at 146 (citing "Local Discovery Guidelines," Guideline 5(d) (D.Md. 1995)).

The Federal Rules do not contemplate such a restrictive interpretation of discovery. The Defendants' effort to redefine rule 26's limits is not consistent with the Federal Rules, which were meant to be flexible enough to allow working trial lawyers to get discovery as efficiently as possible. A lawyer can ask some limited questions regarding privileged matters during a deposition. Further questions may establish waiver or some other reason the privilege does not apply. A lawyer must use his or her professional judgment to get as much as the witness and opposing lawyer will permit, but know when to stop and avoid harassment. Here, repeating the question once did not go too far.

## VI.   THE COURT WILL NOT CONDUCT AN *IN CAMERA* REVIEW.

Finally, Mashburn argues that the best way to resolve this issue is for the Defendants to disclose to the Court, *in camera*, what Gallegos told Parkins and Forney regarding his reasons for changing the finding relating to Mashburn. Mashburn suggests that the Court, without prejudicing the Defendants, could then decide whether the statement was privileged and whether Parkins should respond to Scott's question. The Court does not see, however, what looking at the communication itself would reveal; what is important is the circumstances surrounding the communication. Here,

those circumstances establish the communication was privileged. The Court will not conduct an in camera examination at this time.

**IT IS ORDERED** that the Plaintiff's Motion to Compel is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Robert L. Scott
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Paula I. Forney
Assistant City Attorney
Albuquerque, New Mexico

*Attorney for the Defendants*