IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAULETTE A. MASHBURN,

        Plaintiff,

v.                          Civ. No. 03-747 JH/RLP

ALBUQUERQUE POLICE DEPARTMENT,
CITY OF ALBUQUERQUE, CHIEF GIL GALLEGOS,
in his official and personal capacities, DEPUTY CHIEF
SCHULTZ, in his official and personal capacities,
LT. STEVEN TATE, in his official and personal capacities,
SGT. T. PARKINS, in his official and personal capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' *Motion For Summary Judgment To Dismiss Plaintiff's Tort Claims* [Doc. No. 34], Defendants' *Motion For Summary Judgment To Dismiss Plaintiff's Title VII And Constitutional Claims* [Doc. No. 36], Defendants' *Motion To Strike Affidavit Of William F. Moe* [Doc. No. 45], and Defendants' *Motion To Strike Exhibits 1, 7 and 9 Of Plaintiff's Response To Defendants' Motion For Summary Judgment* [Doc. No. 51]. For the foregoing reasons, the motion for summary judgment on Plaintiff's tort claims will be denied as moot, the motion for summary judgment on Plaintiff's Title VII claims will be granted, the motion to strike Moe's affidavit will be denied, and the motion to strike Exhibits 1, 7, and 9 will be granted in part and denied in part.

**FACTS**

The undisputed material facts, viewed in the light most favorable to the Plaintiff, are as follows. Plaintiff is an officer assigned to the Field Services Bureau of the Albuquerque Police

Department ("APD"), where she has worked since 1985. In November 2001, Plaintiff was involved in an incident involving a bank robber, a number of other police officers, a vehicle chase, and eventually the killing of the bank robber by a different officer. During the first part of the incident Plaintiff and another female officer (Sheryl Paloni) fired their handguns at the tires of the robber's vehicle. The robber fled to a nearby parking lot, where a male officer (Anthony Montano) also shot at the tires of the vehicle with his handgun. At the time, APD had in effect a standard operating procedure ("SOP"), which stated that an officer should not use a handgun to shoot at the tires of a vehicle, but should instead use a rifle or a shotgun. Plaintiff and the other two officers were therefore in violation of the literal terms of this SOP. Eventually, a fourth officer shot and killed the bank robber.

Following the shooting, Defendant Todd Parkins conducted an Internal Affairs investigation evaluating the conduct of the four officers who fired shots during the incident--Plaintiff, the other two officers who shot at the bank robbers tires, and the officer who shot and killed the robber. Defendant Steven Tate supervised Parkins. In June of 2002, the investigation resulted in findings that may be summarized as follows: (1) Plaintiff and Paloni were found to be in violation of the firing-at-tires SOP, because they violated its requirements without sufficient justification; (2) Montano was not found in violation of the SOP because he had sufficient justification to shoot at the tires, even with his handgun; and (3) the investigator recommended that Plaintiff and Paloni attend retraining at the Police Academy regarding the SOP and the use of deadly force. This recommendation was adopted by the Deputy Chief (Defendant Raymond Schultz).

On September 5, 2002, the Chief of Police (Defendant Gil Gallegos) wrote memoranda to Plaintiff, Paloni, and Montano, exonerating all three of them from the charge of violating the SOP,

but requiring all three of them to attend a training session to cover the SOP and other matters as determined by the Director of Training. Neither Plaintiff nor Paloni attended retraining, although Montano did receive some informal retraining from his sergeant. There is no evidence that Plaintiff suffered a change in job duties or title, or any decrease in pay as a result of the shooting incident. After exhausting her administrative remedies, she filed this lawsuit asserting claims for disparate treatment under Title VII of the Civil Rights Act of 1964, violation of her constitutional rights in violation of 42 U.S.C. § 1983, and various state common law torts.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze the motions for summary judgment under this standard.

## DISCUSSION

**I.    MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S TORT CLAIMS**

In her Complaint, Plaintiff asserted claims for intentional infliction of emotional distress,

defamation, prima facie tort, and retaliation for filing a worker's compensation claim. Defendants have moved for summary judgment on each of these claims. In her response brief, [Doc. No. 39], Plaintiff stated that she is withdrawing her claims for defamation, prima facie tort, and retaliation. With regard to her claim for intentional infliction of emotional distress, Plaintiff also states that, while she is withdrawing her claim for compensatory damages for this tort, she still maintains her claim for punitive damages, "especially if the jury decides that they have lied in [sic] anyway."

The Court agrees with Defendants that they may not be held liable for punitive damages if there is no finding of liability for the underlying tort. However, the issue is moot because on July 28, 2004, the Court entered a Stipulated Order dismissing all of Plaintiff's tort claims. Accordingly, the motion for summary judgment will be denied as moot.

## II. MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII AND CONSTITUTIONAL CLAIMS

By a Stipulated Order entered on July 28, 2004, Plaintiff's constitutional claims under 42 U.S.C. § 1983 were dismissed. Accordingly, Defendants' motion for summary judgment as to those claims is moot.

However, Plaintiff's Title VII claim for sex discrimination is still viable. Plaintiff contends she suffered disparate treatment when she and Paloni were disciplined but the male officers were not. To make a prima facie showing of disparate treatment, Plaintiff was required to present evidence establishing that she is a member of a protected class; she suffered an adverse employment action; and similarly situated employees were treated differently than she was treated. *Trujillo v. University of Colorado*, 157 F.3d 1211, 1215 (10th Cir. 1998). Her claim, therefore, depends on the existence of an adverse employment action; without such an action, the discipline imposed by Defendants on

Plaintiff is not actionable under Title VII.

To be considered an adverse employment action, an act of discrimination by an employer must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). As Plaintiff correctly points out, the Tenth Circuit defines an adverse employment action liberally, and does not limit such actions to monetary losses in the form of wages and benefits. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003). However, an adverse employment action requires employer conduct that is "materially adverse" to an employee's job status, such as termination, demotion, or an unwelcome reassignment with significantly different duties. *Wells v. Colorado Dep't of Transportation*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). Actions presenting nothing beyond a mere inconvenience or alteration of responsibilities do not constitute an adverse employment action. *Stinnett*, 337 F.3d at 1217. The facts of each situation must be examined to determine whether the employer's conduct rises to the level of an actionable adverse employment action. *Id*. The Court must review the claimed adverse employment action in this case with that standard in mind.

The claimed adverse action in this case is the internal affairs (IA) investigation that resulted in a finding that Plaintiff and Paloni had violated the tire-shooting SOP and that their firearm discharges were unjustified, while Montano's was considered justified. The IA investigator recommended that Plaintiff be disciplined with retraining. Deputy Chief Raymond Schultz also concurred in this recommendation, and a final disposition was placed in the IA file, sustaining the SOP violation and imposing discipline of Retraining at APD Academy. In sum, the claimed adverse employment action consists of the ultimate determination that Plaintiff's violation of the SOP was not

justified, and that she would need to undergo retraining on the use of deadly force.

Finding that an employee has committed a violation of the rules and requiring that employee to undergo retraining concerning those rules simply does not constitute a significant change in employment status.  Plaintiff retained all of her pay and benefits, was not transferred to a position of less responsibility, and was not forced to perform menial tasks.  Instead, she was ordered to temporarily attend a retraining session of uncertain duration (although in fact she did not attend that retraining).  There is no evidence that attending the retraining would have cost Plaintiff any overtime or had any tangible impact on her employment.  There is also no evidence that the finding of an SOP violation, in conjunction with the retraining requirement, would have any effect on Plaintiff's future opportunities for promotion.

A single instance in which an employer orders an employee to attend retraining, standing alone, does not rise to the level of an adverse employment action.  In fact, the Tenth Circuit Court of Appeals has held that temporary assignment to 90-day retraining program, during which rate of pay, title, and benefits remained same, was not adverse employment action.  *Seely v. Runyon*, 1998 WL 863974 (10th Cir. Dec. 14, 1998), *affirming* 966 F. Supp. 1060 (D. Utah 1997) (same).  Other courts have made similar findings.  *See, e.g., Pritchett v. Western Resources, Inc.*, 313 F. Supp. 2d 1120, 1132 (D. Kan. 2004) (holding that required participation in retraining program did not constitute adverse employment action); *Munoz v. Western Resources Inc.*, 225 F. Supp. 2d 1265, 1270 (D. Kan. 2002) (finding that poor evaluation of employee resulting in retraining, but no loss of benefits or adverse effect on future employment, was not adverse employment action); *Daulo v. Commonwealth Edison*, 938 F.Supp. 1388 (N.D. Ill. 1996) ("The Court expresses great doubt as to whether a temporary retraining program can qualify as an adverse employment action.").

Only where the retraining has been accompanied by other actions by the employer, or has caused a material impact on the employees pay, benefits, or future employment, has an adverse employment action been found to exist. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 2000) (reduction of duties, negative personnel reports, and other disciplinary action, in addition to required remedial training constituted adverse employment action); *Bishop v. Bell Atlantic Corp.*, 2001 WL 40910 (D. Me. Jan. 11, 2001) (where retraining affected employees productivity and interfered with his opportunities to earn overtime, it was an adverse employment action). In that regard, Plaintiff has testified that she believes she has suffered in three ways. First, Plaintiff claims that her credibility with other officers has suffered; however, even if true, this is not enough to rise to the level of an adverse employment action. This general subjective statement, made without concrete examples or testimony, is simply insufficient, even viewed in the light most favorable to Plaintiff, to raise an issue of fact as to whether a significant number of other officers, particularly those she might have to work with on a regular basis, actually distrusted her abilities following the adverse disciplinary findings. Stated another way, there is not enough evidence here to allow a finding of a significant change in Plaintiff's employment status. *Cf. Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1300 (3d Cir. 1997) (police officer's claim that she was subjected to unsubstantiated reprimands and derogatory comments subsequent to filing harassment complaint did not constitute adverse employment action). Second, Plaintiff claims that on one call in 2003 she was asked to "baby-sit the family" while others officers dealt with the incident itself. Again, however, one incident alone does not demonstrate any significant change in Plaintiff's job duties or demonstrate that she has been relegated to lesser tasks. Third, Plaintiff claims that she was denied the opportunity to work overtime during the 2003 Albuquerque Balloon Fiesta and during the Bosque fire. However, Plaintiff

also acknowledged that she did not know why she was not offered overtime during the Fiesta, and that other officers who, like her, were assigned to the day shift also did not receive the opportunity to work overtime during the fire. Plaintiff's tenuous statements simply are not enough to connect her alleged loss of overtime to the initial finding that she had violated standard operating procedures.

Because Plaintiff cannot establish the third element of her prima facie case showing an adverse employment action, summary judgment is appropriate. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265. 322 (1986) (holding that summary judgment is appropriate against any party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court need not reach the other arguments raised in Defendants' motion for summary judgment on Plaintiff's Title VII claim.

### III.    MOTIONS TO STRIKE

Defendants have filed two motions to strike various exhibits submitted by Plaintiff in support of her response to Defendants' motion for summary judgment. The first is a motion to strike the affidavit of William Moe. The Court has reviewed the affidavit and the portions of the Moe deposition submitted by the parties. The Court finds most of the contents of the affidavit consistent with Moe's deposition testimony. However, the Court has considered only those portions of the affidavit that are based on Moe's personal knowledge, do not constitute unsubstantiated hearsay, and are relevant to the issues in this case. The motion to strike Moe's affidavit in its entirety will therefore be denied.

In their second motion, the Defendants ask the Court to strike Plaintiff's affidavit (Exhibit 1). As with Moe's affidavit, the Court has considered only those portions of the affidavit that are based on Plaintiff's personal knowledge. However, the Court denies the motion to strike Plaintiff's affidavit in its entirety. Defendants also ask the Court to strike unsworn correspondence that was not authenticated by any witness in a deposition (Exhibit 7) and a transcript of Gerald Galvin's commentary regarding a videotape of the police shooting (Exhibit 9) that was not previously provided by Plaintiff to the Defendants during the course of discovery. Defendants' request to strike Exhibits 7 and 9 will be granted.

IT IS THEREFORE ORDERED that:

(1) Defendants' *Motion For Summary Judgment To Dismiss Plaintiff's Tort Claims* [Doc. No. 34] is DENIED AS MOOT;

(2) Defendants' *Motion For Summary Judgment To Dismiss Plaintiff's Title VII And Constitutional Claims* [Doc. No. 36] is GRANTED and judgment will be entered in favor of Defendants on Plaintiff's sole remaining claim under Title VII;

(3) Defendants' *Motion To Strike Affidavit Of William F. Moe* [Doc. No. 45] is DENIED; and

(4) Defendants' *Motion To Strike Exhibits 1, 7 and 9 Of Plaintiff's Response To Defendants' Motion For Summary Judgment* [Doc. No. 51] is GRANTED IN PART and DENIED IN PART.

_____
UNITED STATES DISTRICT JUDGE